IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KRISTIN W.,[1] | ) | |
| | ) | Civil Action No. 7:22-CV-00692 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MARTIN O'MALLEY,[2] | ) | By: C. Kailani Memmer |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Kristin W. ("Kristin") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled prior to December 31, 2017 and therefore ineligible for disability insurance benefits ("DIB") prior to that date under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 18. As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

For the reasons detailed below, I recommend **DENYING** Kristin's Motion for Summary Judgment, ECF No. 11; **AFFIRMING** the Commissioner's final decision denying Kristin's DIB claim; and **DISMISSING** this case from the Court's active docket.

**STANDARD OF REVIEW**

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Kristin failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the Administrative Law Judge's ("ALJ") analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work; instead, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2).

## CLAIM HISTORY

Kristin filed for Title II DIB on July 22, 2020, alleging that her disability began on November 1, 2016. R. 13, 64, 171–72. Kristin reported she was disabled due to a variety of physical and mental impairments including Multiple Sclerosis ("MS"); asthma; anxiety; depression; fatigue; numbness; difficulty speaking; difficulty swallowing; dizziness; vertigo; motion sickness; nausea; unable to bend over look around or walk down steps without getting dizzy; and allergies. R. 59. Kristin's date last insured is December 31, 2017. R. 13, 83. Kristin's claims were denied by the Commissioner at the initial and reconsideration level of the administrative review. R. 94. On January 26, 2022, ALJ Nicolas R. Foster held an administrative hearing via Zoom to consider Kristin's claims. R. 30–57. Counsel represented Kristin at the hearing, which included testimony from Kristin and vocational expert, Brian Bierley. *Id.* On March 9, 2022, the ALJ entered a decision analyzing Kristin's claims under the familiar five-step[4] process and denying her request for benefits. R. 10–29.

The ALJ determined that Kristin last met the insured status requirements of the Social Security Act on December 31, 2017. R. 15. At the first step, the ALJ found that Kristin had not engaged in substantial gainful activity during the period from her alleged onset date of November 1, 2016, through her date last insured. *Id.* At the second step, the ALJ found that

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the national economy. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

Kristin has the following severe impairments: degenerative disc disease of the cervical spine; stress headache disorder; and asthma. *Id.* The ALJ determined that the evidence as a whole is not sufficient to show that Kristin had MS before December 31, 2017, and consequently, MS was not a medically determinable impairment. R. 16–17. The ALJ found that Kristin's Post Traumatic Stress Disorder ("PTSD") diagnosis was a medically determinable mental impairment. R. 17–18. However, the ALJ determined that Kristin's PTSD caused no more than a mild limitation in any of the functional areas, and consequently, was not severe. R. 18. At the third step, the ALJ found that Kristin's impairments—either individually or in combination—did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). R. 18. The ALJ specifically considered listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and listing 3.03 (asthma). *Id.*

The ALJ concluded that Kristin retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), with the following limitations:

> [S]he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She could not climb ladders, ropes, or scaffolds. She could not work around hazards, such as unprotected heights and moving mechanical parts. She could frequently handle and finger with the bilateral upper extremities. She could work in an environment involving no more than a moderate noise level, as defined by the Dictionary of Occupational Titles and the Selected Characteristics of Occupations. She could not perform work tasks done primarily in bright outdoor sunlight or have any exposure to flashing lights. She could not work around dusts, fumes, or pulmonary irritants. She could tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in a work setting, or more than occasional contact with the public.

R. 19. Further, the ALJ determined that, although Kristin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Kristin's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with

4

the medical evidence and other evidence in the record. *Id.* Specifically, the ALJ determined that, considering the objective findings contained in the record, the conservative care Kristin received, and Kristin's admitted ability to perform a variety of daily tasks, all suggest that her symptoms were not as severe or as limiting as Kristin claims.[5] R. 21.

At step four, considering the vocational expert's opinion regarding the above-mentioned RFC limitations, the ALJ determined that Kristin was unable to perform any past relevant work. R. 22. At step five, the ALJ determined that considering Kristin's age, education, work experience, and RFC, Kristin is able to successfully adjust to other work that exists in significant numbers in the national economy such as final assembler, inspector, and table worker. R. 23. Therefore, the ALJ concluded that a finding of "not disabled" was appropriate. R. 24.

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Kristin's request for review. R. 1–7. This appeal followed.

## **FACTS**

Kristin was born on February 9, 1984, which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c). R. 23. She has at least a high school education and previously worked as a purchasing assistant, food delivery driver, laboratory assistant, and a waitress. R. 187.

In rendering his decision, the ALJ reviewed medical records from numerous providers.[6] R. 261–1164. Additionally, the ALJ considered the testimony of Kristin and evidence from her husband. R. 30–57; 216–24.

---

[5] The ALJ acknowledges Kristin sought treatment for her impairments but found "medications and appointments with a chiropractor" was "quite conservative" for the complaints Kristin alleges. R. 21. Additionally, the ALJ spent significant time discussing Kristin's activities of daily living ("ADLs"). *Id.* (noting "claimant was able to care for her personal needs, do light chores around the house, prepare simple meals, drive, shop for a few items, attend church, and play cards with friends").

[6] The ALJ reviewed medical records from Novant Health, Acupuncture Center of Roanoke, Innersun Family Chiropractic, LLC, Carilion Clinic Neurology, Psychological Health Roanoke, Wake Forest Baptist Health Neurology, Blue Ridge Associates in Neurology, Carilion Clinic Neurology/Roanoke

I.     **Medical Evidence**

    A.     **Medical Treatment Evidence During the Relevant Period[7]**

On February 21, 2017, Kristin saw a chiropractor, Dan Davidson, D.C., complaining of headaches, neck pain, mid-back tightness, and lower back soreness. R. 1161. Kristin stated that since her move to Roanoke in the fall of 2016, her headaches had become an almost daily occurrence. *Id.* Dr. Davidson diagnosed Kristin with cervicalgia and other kyphosis of the cervical region. *Id.* In a follow-up appointment on March 14, 2017, Kristin related experiencing worsening headaches and increased lower back tightness over the previous week. R. 1162. Dr. Davidson utilized chiropractic manipulative therapy in Kristin's cervical, thoracic, and lumbar regions. *Id.*

On April 4, 2017, Kristin saw Wendy Brown, DC, at InnerSun Family Chiropractic. R. 315. She related a history of asthma and intermittent episodes of lower back pain and headaches. *Id.* Kristin described her back pain as a three (3/10) on average with the most severe episodes being a ten (10/10). *Id.* She stated that she would begin to feel back pain after 30 minutes of activity, and that her back pain had been occurring on a weekly basis since moving to Roanoke. *Id.* Kristin informed Dr. Brown that her headaches were worsening and increasing in frequency. *Id.* She related her headaches typically ranged from a 3 to 5 out of 10, with the most severe episodes being a 10/10. *Id.* Dr. Brown noted that the headaches were based in the suboccipital

---

Memorial Hospital, Wake Forest University Baptist Medical Center, Southwest Medical Clinic, Velocity Care, Carilion Allergy, Carilion Family Medicine, Novant Woman Care, Twin City Health, Life Abundant Chiropractic, Cultivate Wellness LLC, Cape Chiropractic, and The Back Resort. R. 27–29.

[7] For purposes of this opinion, the "relevant period" is November 1, 2016 (Kristin's alleged disability onset date) through December 31, 2017 (Kristin's date last insured). R. 13–14; *see Johnson v. Barnhart*, 434 F.3d 650, 656 (4th Cir. 2005) ("To qualify for DIB, [the claimant] must prove that she became disabled prior to the expiration of her insured status."); 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). However, I have reviewed and considered all medical evidence contained in the Administrative Transcript, ECF No. 6, even if outside the relevant period.

area, and stress and bright lights triggered them. *Id.* Kristin related that rest and chiropractic care helped. *Id.*

At the April 4, 2017, visit, Dr. Brown documented that Kristin was able to ambulate without assistance but noted Kristin had an antalgic gait with mild lumbar flexion. R. 316. Upon examination, Dr. Brown found notable diminished range of motion ("ROM") of the cervical spine in all planes apart from flexion; moderate-to-severe trigger points/musculature hypertonicity over the cervical region, upper trapezius, and rhomboideus; diminished range of motion of the lumbar spine in all planes; tenderness over the lumbar paraspinal musculature; and mild trigger points/musculature hypertonicity over the lumbar region and quadratus lumborum. R. 316–17. Dr. Brown diagnosed Kristin with segmental and somatic dysfunction of the cervical, thoracic, lumbar, and sacral regions. R. 317. Dr. Brown described Kristin as alert and oriented with a pleasant mood. R. 316. She further noted no issues with Kristin's concentration or speech pattern. *Id.*

Kristin returned to Dr. Brown two days later for a follow-up appointment on April 6, 2017. R. 319. Dr. Brown noted muscle spasms on the left side in Kristin's cervical region with mild discomfort and tenderness. *Id.* Dr. Brown indicated that Kristin would be seen two-to-four times a month with progressive re-examination every 12 months. R. 320. Kristin saw Dr. Brown twenty-one times between April and December of 2017. R. 315–57. During each visit, Dr. Brown consistently reported a decreased ROM in Kristin's cervical region and mild-to-moderate muscle spasms throughout her back, especially in her lumbar region. *Id.*

On April 27, 2017, Kristin visited Southwest Medical Clinic complaining of ongoing headaches. R. 856. The treating physician noted Kristin's asthma was stable, but she was experiencing stress headaches. *Id.*

7

### B. Medical Treatment Evidence After the Relevant Period

Two years after the conclusion of the relevant period, Kristin was diagnosed with MS at the age of 35. R. 397, 486. On December 3, 2019, Kristin went to the emergency department at Roanoke Memorial Hospital complaining of numbness, balance problems, dizziness, fatigue, diplopia, and vertigo. R. 397. Records indicate Kristin denied having any other previous discrete episodes of neurological symptoms. *Id.* However, Kristin expressed that she had been "feeling bad" for "several weeks" prior to her hospitalization. R. 487. Kristin reported having symptoms of vertigo for six months prior to the relapse episode that led to her hospitalization, along with blurry vision, dipoplia, scintillating scotomas, tremors/cramps in all extremities, fatigable weakness in all extremities with prolonged activity, vertigo with stress, slowed processing speed, forgetfulness, word-finding difficulties, some hesitancy with talking, sensory deficits in detecting bladder fullness, unsteadiness with walking, and depression. R. 397–98.

Kristin's labs were within normal limits and a CT scan of her head was negative for acute intracranial abnormalities. R. 491. The preliminary evaluation of Kristin's symptoms were noted to be indicative of transient ischemic attack, stroke, and MS. *Id.* The next day, December 4, 2019, an MRI revealed multiple small brain lesions that were noted to be suspicious for demyelinating disease (multiple sclerosis), with several of the lesions found to be "suspicious for active plaques." R. 524, 664–66. An MRI of Kristin's cervical spine on December 5, 2019, showed a focus of enhancement within the cervical medullary junction and inferior margin of the right cerebellum, concerning for active demyelination. R. 524, 655–56. On December 19, 2019, Kristin saw Dr. Shah at Carilion Clinic for a neurology consultation. R. 397. Dr. Shah examined Kristin's MRIs, and noted that "[n]ot all of the lesions were enhancing, suggesting that [Kristin]

8

has had previous episodes of demyelination." R. 397. Dr. Shah noted her diagnostic impression was demyelinating disease—likely Relapsing Remitting Multiple Sclerosis. *Id.*

On February 5, 2020, Kristin saw Dr. Abou-Zeid at Wake Forest Baptist Health for evaluation and management of her recently diagnosed MS. R. 431. During her appointment, Kristin reported having difficulties with attention, cognition, and coping with occupational stress over the previous one to two years and occasional headaches over the last four to five years. *Id.* In an initial visit with Dr. Jill Cramer at Blue Ridge Associated in Neurology, on April 21, 2020, Kristin reported a number of new symptoms. R. 437. Upon reflection, Kristin told Dr. Cramer she had experienced "weird pains" that may have been related to her MS up to 10 years ago. *Id.*

### C. State Agency Medical Opinion Evidence

On February 3, 2021, state agency psychologist Richard Luck, Ph.D., reviewed the record evidence, noting that Plaintiff "did not report any mental health symptoms or treatment for such" during the relevant period. R. 65. Dr. Luck found that Plaintiff's mental impairments were not severe and that she had no limitations in any area of mental functioning. R. 66.

On February 3, 2021, state agency physician Richard Surrusco, M.D., reviewed the record evidence and found Plaintiff could perform a range of light work, including occasionally lifting 20 pounds; frequently lifting 10 pounds; sitting, standing, or walking for six hours each in an eight-hour workday; and occasionally performing postural movements. R. 69–71.

On April 28, 2021, state agency psychologist Howard Leizer, Ph.D., reviewed the record and found that the evidence seemed to support Dr. Luck's finding that Plaintiff did not have a severe mental impairment, but the record contained insufficient evidence to make a determination. R. 78.

On April 30, 2021, William Rutherford, Jr., M.D., reviewed the record and found that the evidence seemed to support Dr. Surrusco's finding that Plaintiff could perform a range of light work, but additional evidence was needed to assess the claim. R. 78.

## II.     Evidence Relating to Kristin's Symptoms

### A.     Administrative Hearing Testimony (01/26/2022)

Kristin testified that she tried to work after the alleged onset date but was unable to maintain a job due to difficulty reading orders, remembering directions, tolerating stress, and dealing with vertigo and fatigue. R. 48–49. She said she developed cognitive problems around the latter part of 2016 that worsened by April 2017 to the point that she was having difficulty shopping for groceries or making a decision about anything. R. 38. Additionally, she testified that she developed dizziness and an extreme sensitivity to light that would impact her vision and caused headaches during this time period. *Id.*

During the time period from November 2016 through December 2017, Kristin alleged she was suffering from numerous symptoms including headaches, blurry vision, nausea, dizziness, neck, back, and shoulder pain, and difficulty standing and sitting for prolonged periods of time. R. 41–47. She stated that her headaches were daily, would "pretty much" last "like all day," and "interfered with everything." R. 39. Kristin testified that due to her blurry vision she could no longer read to her young children. R. 46. She alleged she had a limited capacity to stand or sit because of fatigue and muscle weakness. R. 42–43. Kristin estimated she was unable to stand for more than 20 minutes and could sit for 30 minutes to an hour before needing to lie down to rest. *Id.* She stated that she would have to lie down approximately ten times a day, but that some days she could "barely get out of bed." R. 43–44. Kristin also mentioned problems

with her hands that made it difficult for her to do things such as chopping vegetables and preparing meals for her family. R. 41.

Kristin also testified that her asthma caused her to feel chest pain and shortness of breath. R. 44. She noted that she would "wear out" quickly with any type of physical activity. R. 45. Kristin maintained that her medical conditions affected her ability to do "pretty much everything." *Id*.

B.  **Disability Function Reports and Activities of Daily Living**

In a function report dated August 25, 2020, Kristin stated she stopped engaging in most social activities because of her medical conditions. R. 213. She alleged that her social activities were reduced to playing cards with friends once a week and attending church and an MS Support Group. R. 212. Kristin also alleged she had difficulty completing many tasks due to fatigue. R. 225. She stated that she could occasionally shower, get dressed, and make breakfast without having to stop to rest, but more often than not, she would have to take a break to prevent getting fatigued. *Id.* In relation to housework, Kristin stated she could do the dishes and laundry, but they required taking several breaks. R. 240. However, during the relevant time period, Dr. Brown's records reflect questionnaire forms indicating Kristin's symptoms of pain and fatigue in relation to standing, working, sitting were mild to non-existent. R. 382–394.

Kristin's husband completed a Third Party Function Report, largely corroborating Kristin's testimony. R. 217–224. Her husband stated that Kristin became extremely stressed in 2016 due to their daughter, Ashlyn's, seizures. R. 224. He claimed that their daughter's condition improved in February of 2017, but Kristin continued to worsen. *Id.* Joshua claimed that in April and May of 2017, Kristin's symptoms were "so bad that she couldn't go out." R. 224.

# ANALYSIS

Kristin alleges that the ALJ erred in its decision denying her benefits claiming the following assignments of error: (1) the ALJ's assessment of Kristin's MS is not supported by substantial evidence; (2) the ALJ failed to perform a proper function-by-function analysis of her symptoms in determining her RFC; and (3) the ALJ's assessment of Kristin's subjective allegations is not supported by substantial evidence.

## I. The Commissioner's Assessment of Kristin's Impairments and RFC is Supported by Substantial Evidence

### A. The ALJ's assessment of Kristin's MS is supported by substantial evidence

In his decision, the ALJ found that the evidence as a whole was not sufficient to show that plaintiff had multiple sclerosis before December 31, 2017, and consequently, multiple sclerosis was not a medically determinable impairment. R. 15. Kristin alleges the ALJ erroneously found that she had not complained of symptoms associated with MS during the period at issue, and therefore, the ALJ's determination was not supported by substantial evidence. *See* ECF No. 12 at 15–16.

The Commissioner argues that the ALJ fully evaluated Kristin's MS and identified substantial evidentiary support for his finding that MS was not medically determinable during the relevant period and, even if the ALJ erred at step two, any such error was harmless. *See* ECF No. 16 at 9. In support of his argument regarding harmless error, the defendant cites *Vitrano v. Colvin*, stating any error by the ALJ at step two is harmless if the ALJ considers the effects of all of [the claimant's] impairments in the subsequent steps." *Vitrano*, No, 6:14-CV-51, 2016 WL 1032888, at *2 (W.D. Va. Mar. 15, 2016). Here, the Commissioner argues that the ALJ adequately addressed Kristin's symptoms of low back and neck pain, and headaches, as

12

limitations of Kristin's other severe impairments when the ALJ assessed Kristin's RFC. *See* ECF No. 16, at 9. I agree with the Commissioner.

The regulations provide that a "medically determinable impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1521. The impairment must be established by objective medical evidence from an acceptable medical source. *Id*. A statement of symptoms, diagnosis, or a medical opinion will not establish the existence of a medically determinable impairment. *Id*. With regard to Kristin's MS, the ALJ stated the following at step two:

> As for multiple sclerosis, the claimant was diagnosed with this condition in December 2019. At that time, her neurologist noted that she had a high burden of lesions for a new diagnosis, but she told providers that she only began experiencing symptoms of this condition, including balance problems, dizziness, fatigue, diplopia, and vertigo in November 2019. Further, neurological testing conducted during the relevant period was normal [Exs. 4F at 1-6; 7F at 1-6; 8F at 1; 13F at 3]. An individual's statements regarding her symptoms are not enough to establish the existence of an impairment. Rather, the record must contain medical evidence consisting of signs, symptoms, and laboratory findings to support those statements [20 CFR 404.1521]. Here, the objective evidence does not show that the claimant had multiple sclerosis prior to her date last insured. Examinations did not reveal abnormalities in her neurological functioning, and she did not complain of symptoms associated with multiple sclerosis during the period at issue here. Instead, she told clinicians that her symptoms developed only shortly before she was diagnosed. The evidence as a whole is not sufficient to show that the claimant had multiple sclerosis before December 31, 2017, and the undersigned accordingly must find that it was not a medically determinable impairment.

R. 16. The Court finds that such analysis of the evidence and citation and application of the relevant regulation satisfies the substantial evidence standard. Although Kristin disagrees with the conclusion, and reasonable minds may differ, it is not sufficient for this Court to overturn the well-reasoned analysis of the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)

(quoting *Craig*, 76 F.3d at 589) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Further, as argued by the Commissioner, even if the ALJ erred at step-two, it is harmless error as the ALJ engaged in a lengthy and comprehensive analysis of the evidence related to Kristin's headaches and neck and back pain in determining her RFC. R. 19–22. As stated by the Commissioner, the ALJ considered any symptoms that existed during the relevant period, whether attributed to MS or not, in analyzing the evidence and determining Kristin's RFC. *See Vitrano*, 2016 WL 1032888, at *2 ("[A]ny error by the ALJ at step two is harmless if the ALJ considers the effects of all of [the claimant's] impairments in the subsequent steps.") (citations omitted).

In his assessment of Kristin's RFC, the ALJ reviewed the record in detail, and discussed the applicable medical evidence, opinion evidence, and Kristin's subjective complaints regarding her headaches and neck and back pain. *See* R. 19–22 (discussing Kristin's long history of neck pain, degenerative changes in her cervical spine, and stress headaches, among other symptoms, during the relevant period). In sum, Kristin's argument amounts to a request that this Court impermissibly reweigh the evidence and reach a different conclusion than the ALJ. I decline to do so.

    **B.    The ALJ performed a proper function-by-function analysis in determining Kristin's RFC.**

Kristin argues that the ALJ erred by failing to make specific findings regarding whether plaintiff's impairments would result in limitations on her ability to sit, result in a need to lie down during the day, or result in an unacceptable number of absences from work during the relevant period. *See* ECF No. 12 at 18. She asserts that under 20 C.F.R. §§ 404.1502(i), 416.902(n), the ALJ must consider her symptoms or own description of her medical impairments

14

in assessing a proper RFC determination. *See Mascio*, 780 F.3d at 639–40. Thus, Kristin argues the ALJ was required—and failed—to assess how her impairments and resulting symptoms would cause her to experience episodes of pain or fatigue necessitating breaks and/or naps during the workday and how often those breaks would occur. *See* ECF No. 12 at 19. The Commissioner argues that the ALJ properly considered Kristin's ability to perform the relevant functions and created an "exemplary" logical bridge between the evidence and his conclusions. ECF No. 16 at 11.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. *See* SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In *Mascio v. Colvin*, the Fourth Circuit rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that " '[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' " *Mascio*, 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

15

The ALJ found that Kristin's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Kristin's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 20. The ALJ discussed, in detail, Kristin's symptoms, her resulting limitations, the medical evidence, medical opinions, Kristin's testimony, her husband's written submission, and conflicting medical evidence. R. 19–22. The ALJ engaged in a lengthy and comprehensive analysis regarding Kristin's RFC. *Id*.

As for Kristin's limitations regarding sitting during an eight-hour workday, the ALJ specifically addressed Kristin's testimony that she could sit for only 30 to 60 minutes. R. 20. The ALJ then walked through other relevant evidence in his decision regarding Kristin's limitations to sit during an eight-hour workday. For example, the ALJ noted that Dr. Surrusco reviewed the record and found that she could sit for six hours in an eight-hour workday, which is consistent with the ALJ's RFC finding. R. 21. Further, the ALJ noted that Kristin "[did] not describe[] substantial difficulties sitting, and clinicians did not indicate that she appeared uncomfortable sitting." R. 21. Such an analysis by the ALJ is sufficient for this Court to engage in a meaningful review regarding Kristin's sitting abilities during an eight-hour workday.

As for Kristin's limitations that would result in a need to lie down during the day or result in an unacceptable number of absences, the ALJ considered Kristin's allegations and testimony regarding her limitations, and compared them to the other medical and non-medical evidence in the record, and accommodated her limitations through the exceptions to her RFC. R. 19–22. For example, the ALJ noted that her physical examinations were "largely normal," with no noted abnormalities in her gait, strength, dexterity, or mental status, and no mention that she appeared

16

uncomfortable or fatigued during her appointments. R. 21. The ALJ also noted that Kristin received some treatment for her impairments, but her treatment was conservative, mainly consisting of medications and appointments with chiropractors. *Id*. The ALJ also discussed Kristin's daily activities in reference to her limitations, including that Kristin provided she could drive, prepare simple meals, go to the store for a few items, and do chores around the house, like vacuuming, mopping, or doing the laundry for a short period. R. 20. The ALJ also considered that Kristin stated that she attended church and spent time playing cards with friends, but otherwise avoided social activities. *Id*.

Lastly, the ALJ engaged in a lengthy discussion regarding the medical opinion evidence, appropriately explaining the persuasiveness of the opinions through an analysis of their supportability and consistency. R. 21–22. Contrary to Kristin's argument, the ALJ considered Kristin's subjective allegations (as further discussed below) in determining her RFC, specifically addressing them when discrediting Dr. Surrusco's medical opinion that concluded Kristin could engage in more exertional activities than determined by the ALJ. *Id*. Accordingly, the ALJ's decision includes the required narrative description under SSR 96-8p and contains sufficient information to allow this Court to engage in a meaningful review.

### C. The ALJ's assessment of Kristin's subjective allegations is supported by substantial evidence.

Kristin argues the ALJ improperly considered plaintiff's pain complaints; applied an incorrect legal standard in his review; failed to quantify plaintiff's daily activities; and failed to explain how they supported his conclusion plaintiff's allegations are not fully supported. *See* ECF No. 12, at 28. Consequently, she asserts the ALJ failed to build a logical bridge between the evidence and his determination that plaintiff's allegations are not entirely consistent with the evidence of record. *Id.* Conversely, Commissioner argues that the ALJ properly evaluated

17

Kristin's subjective allegations by comparing her statements and reports with conflicting statements to treating practitioners during the relevant time period. *See* ECF No. 16, at 17. Additionally, Commissioner argues that Kristin may point to evidence that she believes could support a different conclusion, in order to demonstrate error under the substantial evidence standard, but she was required to show that a "reasonable adjudicator would be compelled to conclude to the contrary." *See* ECF No. 16, at 19–20 (quoting *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)).

An ALJ's assessment of plaintiff's allegations is not to be given deferential weight if it is not supported by substantial evidence. *Craig*, 76 F.3d at 589. "The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence." *Mabus v. Colvin*, 2015 U.S. Dist. LEXIS 38179, *39-40 (S.C. Dist. Mar. 26, 2015) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). A claimant "is entitled to rely exclusively on subjective evidence to prove that her symptoms were so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' and an ALJ 'applie[s] an incorrect legal standard' when discrediting [claimant's] complaints based on the lack of objective evidence corroborating them." *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006); *see also Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (finding an ALJ "improperly increased the burden of proof by effectively requiring claimant's subjective descriptions of her symptoms to be supported by objective medical evidence"). An ALJ's assessment of the credibility of a claimant's subjective complaints are afforded a high level of deference on review, as the Fourth Circuit has proclaimed such assessments are "virtually unreviewable" on appeal. *Darvishian v. Geren*, 404 F. App'x 822, 831 (4th Cir. 2010).

In this case, the ALJ's analysis of Kristin's subjective allegations is supported by substantial evidence. The ALJ engaged in the familiar two-step process described above. He made an express finding that Kristin's impairments could reasonably be expected to cause the alleged symptoms. R. 29, 31. The ALJ then concluded that "[Kristin's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record as explained in this decision" R. 20. In forming his conclusion, the ALJ analyzed various symptoms and inconsistencies in the record, including: (1) physical examinations revealed some cervical and occipital tenderness and slightly limited cervical range of motion but were otherwise normal; (2) Kristin's treatment was quite conservative, consisting of medications and chiropractic care; and (3) her admitted ability to perform a variety of daily tasks all suggest that the symptoms were not as severe or as limiting as Kristin claims. R. 21. Further, as noted above, the ALJ considered Kristin's subjective complaints and accounted for her symptoms, even discrediting less favorable medical opinion evidence and other objective medical evidence, by including significant limitations in the RFC assessment.

In sum, the ALJ considered Kristin's allegations regarding her symptoms and crafted an evidence-based assessment of her abilities and limitations through review of the other evidence in the record. A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). Accordingly, the Court concludes that the ALJ supported his analysis of Kristin's subjective complaints with substantial evidence, and that Kristin can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** Kristin's Motion for Summary Judgment, ECF No. 11; **AFFIRMING** the Commissioner's final decision denying Kristin's DIB claim; and **DISMISSING** this case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall serve certified copies of this Report and Recommendation on all counsel of record.

Entered:  February 29, 2024

C. Kailani Memmer
United States Magistrate Judge