IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |
|---|---|
| KRISTIN W., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:22-cv-00692 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MARTIN O'MALLEY, ) | By:   Hon. Thomas T. Cullen |
| Commissioner of Social Security, ) | United States District Judge |
| ) | |
| Defendant. ) | |

This social security disability appeal was referred to the Honorable C. Kailani Memmer, United States Magistrate Judge, under 28 U.S.C. § 636(b)(1)(B) for proposed findings of fact and a recommended disposition. Judge Memmer filed a report and recommendation ("R&R") on February 29, 2024, recommending that this court deny Plaintiff Kristin W's ("Kristin") motion for summary judgment and affirm the Commissioner's final decision. Kristin filed timely objections to the R&R seeking this court's review. After a thorough review of the record, the court finds that the ALJ's decision is supported by substantial evidence. Accordingly, it will overrule Kristin's objections, adopt Judge Memmer's R&R in its entirety, deny Kristin's summary judgment motion, and affirm the Commissioner's final decision.

## I.   BACKGROUND

On July 22, 2020, Kristin filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 ("the Act"). (R. 13, 175.) Kristin alleged that she was disabled as of November 1, 2016, due to a number of physical and mental impairments, including: multiple sclerosis ("MS"); fatigue; numbness in her face, tongue,

fingers, and hands; difficulty speaking and swallowing; dizziness and nausea; asthma; allergies; anxiety; and depression. (*See* R. 59, 186.) The Commissioner denied Kristin's application at the initial and reconsideration levels of agency review. (R. 72–73, 80.)

Kristin then requested a hearing before an administrative law judge ("ALJ") and, on January 26, 2022, appeared virtually with her attorney before ALJ Nicolas R. Foster. (R. 30–57.) Both Kristin and a vocational expert testified at the hearing. (*Id.*) Following the hearing, the ALJ issued a detailed decision dated March 9, 2022, concluding that Kristin was not disabled within the meaning of the Act from November 1, 2016, through December 31, 2017, her date last insured under the Act ("the relevant period"). (R. 24, 58.) In his decision, the ALJ found that Kristin had not engaged in substantial gainful activity and had three severe impairments during the relevant period: degenerative disc disease of the cervical spine, stress headache disorder, and asthma. (R. 15.) He determined, however, that Nicole's MS—with which she was diagnosed in December 2019 (R. 215)—and her back pain were not medically determinable impairments *during the relevant period*, and that her mental impairments and allergies were not severe (R. 16). The ALJ then found that Kristin's impairments, individually or in combination, were not of the severity required for a de facto disability finding. (R. 18–19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1526).)

After "careful consideration of the entire record," the ALJ concluded that Kristin had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with additional limitations. (R. 19.) Specifically, the ALJ found that Kristin

> could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She could not climb ladders, ropes, or scaffolds. She could not work around hazards, such as unprotected heights and moving mechanical parts. She could frequently handle and

> finger with the bilateral upper extremities. She could work in an environment involving no more than a moderate noise level, as defined by the Dictionary of Occupational Titles and the Selected Characteristics of Occupations. She could not perform work tasks done primarily in bright outdoor sunlight or have any exposure to flashing lights. She could not work around dusts, fumes, or pulmonary irritants. She could tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in work setting, or more than occasional contact with the public.

(*Id.*) The ALJ determined that, based on Kristin's RFC, she could not perform her past relevant work. (R. 22.) But after considering her age, education, work experience, and RFC, the ALJ determined that Kristin could perform certain jobs that exist in significant numbers in the national economy, such as final assembler, inspector, and table worker. (R. 23.) Accordingly, the ALJ concluded that Kristin was not disabled under the Act during the relevant period. (R. 24.)

Following the ALJ's decision, the Appeals Council denied Kristin's appeal. (R. 1–4.) The ALJ's decision, therefore, became the Commissioner's final decision on October 27, 2022. (R. 1.)

On December 5, 2022, Kristin filed the instant suit challenging the Commissioner's final decision. (Compl. [ECF No. 1].) By standing order and under 28 U.S.C. § 636(b)(1)(B), the court referred the case to a magistrate judge for consideration. (*See* ECF Nos. 10, 18.) Kristin then filed a motion for summary judgment (ECF No. 11), which the Commissioner opposed (ECF No 16). On February 29, 2024, Judge Memmer filed an R&R recommending that the court deny Kristin's motion and affirm the Commissioner's final decision. (R&R at 1

[ECF No. 19].) Kristin filed timely objections (ECF No. 20) and the Commissioner responded (ECF No. 21). Accordingly, this matter is ripe for review.

## II.  STANDARDS OF REVIEW

### A. District Court Review of Magistrate Judge Decision

Federal Rule of Civil Procedure 72(b) provides that, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." The objection requirement set forth in Rule 72(b) is designed to "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Id.* The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

In short, to trigger *de novo* review, the objector must direct the court's attention to "the true ground for [her] objection to the magistrate judge's recommendation." *Osmon v. United States*, 66 F.4th 144, 146 (4th Cir. 2023) (cleaned up).

### B. Judicial Review of Social Security Determinations

It is not the role of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In so doing, the court may neither undertake a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992).

Substantial evidence is not a "large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). But it is more than a mere scintilla and somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. KRISTIN'S OBJECTIONS

Kristin makes three objections to the R&R that mirror the assignments of error she set forth in her summary judgment brief.[1] These objections are conclusory, rehash the same

---

[1] The court incorporates the R&R's detailed facts about Kristin's impairments and medical and procedural history; those facts will not be repeated here unless relevant to the objection under consideration.

arguments she made to Judge Memmer, and ultimately ask the court to overstep its limited role. Nevertheless, she pointed to three instances where she thinks the R&R fell short. Although the court is not obligated to do so, *see Ella H. v. Kijakazi*, No. 3:21cv804, 2023 WL 1422365, at *1 (E.D. Va. Jan. 31, 2023), the court reviews *de novo* Kristen's arguments that the ALJ erred in: (1) finding that Kristin's later-diagnosed MS was not a medically determinable impairment during the relevant period; (2) his RFC analysis; and (3) his assessment of Kristin's subjective allegations.

### A. MS During the Relevant Period

Kristin first asserts that the ALJ erred in step two of the applicable five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4), by finding her MS was not a medically determinable impairment during the relevant period. The court's limited role on review is to ask if substantial evidence supports the ALJ's finding that the objective medical evidence did not establish that Kristin had MS from November 1, 2016 through December 31, 2017. *See Hill v. Astrue*, 774 F. Supp. 2d 777, 780–81 (E.D. Va. 2011); 42 U.S.C. § 405(g) ("The findings of the [ALJ] as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Step two of an ALJ's five-step process requires him to consider whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Before looking at severity, the claimant must first establish the existence of the medical impairment between her alleged disability date and her date last insured with objective medical evidence. 20 C.F.R. § 404.1521; *see Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017) (noting the burden falls on the claimant in steps 1–4 of an ALJ's disability determination). The ALJ "will not use [claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence

of an impairment[]." 20 C.F.R. § 404.1521. Instead, the claimant must establish the impairment's existence using objective medical evidence, which the Act defines as laboratory findings or signs, meaning "anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques" or "anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." 20 C.F.R. § 404.1502; *Huntley v. Kijakazi*, No. 1:20-cv-862, 2021 WL 5834406, at *4 (M.D.N.C. Dec. 9, 2021), *R&R adopted*, ECF No. 20 (Jan. 4, 2022).

Here, the ALJ determined that, notwithstanding her December 2019 diagnosis, Kristin did not establish that her MS was a medically determinable impairment during the relevant period because "the objective evidence does not show that [Kristin] had [MS]" prior to her date last insured. (R. 16.) To be sure, the ALJ acknowledged that, at the time of Kristin's MS diagnosis, one of her physicians, Dr. Shah, "noted that she had a high burden of lesions," which was abnormal for a new diagnosis (R. 16 (citing R. 397)), but the ALJ found that other evidence in the record cut against that note, including that Kristin's neurological tests during the relevant period were normal and that she told providers that her MS symptoms began in November 2019 (*id.*).

Kristin objects to that assessment. (Pl.'s Obj. at 1 [ECF No. 20].) Her main argument appears to be that the ALJ should have classified her headaches and neck and back pain during the relevant period as symptoms of MS instead of assessing them as standalone, medically determinable impairments. (*See* Pl.'s Obj. at 1–2; Pl.'s Br. Supp. Summ. J. at 15–17 [ECF No. 12].) By redirecting the court to her summary judgment brief, Kristin summarizes evidence of her headaches and neck and back pain she claims the ALJ "ignored" before concluding, "[I]t

is clear from the evidence that [she] was experiencing symptoms prior to . . . her date last insured." (Pl.'s Br. Supp. Summ. J. at 17.)

As an initial note, Kristin seemingly forgets that she bears the burden at step two to establish her medically determinable impairments; she does not point to anything in the record that supports her implication that headaches, neck pain, and back pain were associated with her MS. *See Lewis*, 858 F.3d at 861. Regardless, it is simply incorrect to state that the ALJ *ignored* her headaches and neck and back pain from the relevant period. To the contrary, the ALJ found that Kristin carried her burden of showing that her headaches and neck pain were severe medical impairments—"stress headache disorder" and "degenerative disc disease of the cervical spine." (R. 15.) And the ALJ acknowledged that Kristin complained of back pain during the relevant period, but found the lack of objective medical evidence precluded it from being classified as a medically determinable impairment.[2] (R. 16.)

While the ALJ could have explained in more detail why the headache and degenerative-disc impairments were not indicative of early stages of MS and were better assessed as independent impairments, it was not his burden to do so. *See Lewis*, 858 F.3d at 861. The ALJ found that those two early symptoms were severe medical impairments on their own, and thoroughly discussed Kristin's headaches and neck pain in the rest of his disability analysis. (R. 15–24.) And absent evidence to the contrary—Kristin provides none—the court takes the ALJ at his word that he considered the entire record carefully before making his decision. (R. 15); *Reid v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014). His decision to treat

---

[2] Kristin does not challenge the ALJ's finding that her other back pain was not a medically determinably impairment. (*See generally* Pl.'s Obj.; Pl's Br. Supp. Summ. J.)

potential symptoms of one disease as separate, particularly in the absence of other objective medical evidence that would suggest Kristin had MS during the relevant period, was supported by substantial evidence and legally sufficient. The court's limited role does not "substitute its judgment for that of the [ALJ]"; his "findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed." *Hill*, 774 F. Supp. 2d at 780.

More importantly, considering Kristin's overarching objection, the ALJ cited and explained how substantial evidence in the record showed that Kristin was not suffering from MS during the relevant period. For example, the ALJ cited a neurological exam of Kristin in 2017 that returned normal results. (R. 16 (citing R. 856 (record of 2017 neurological exam that "showed no abnormalities")).) He also cited Dr. Shah's notes from Kristin's December 2019 appointment where she was diagnosed with MS, which stated that Kristin reported only recently experiencing MS symptoms. (*See* R. 16 (citing R. 397 (noting that Kristin "denie[d] any other previous discrete episodes of neurological symptoms, though she noticed symptoms of vertigo ~ 6 mo[nths] prior to her relapse in early December . . . . [and] denie[d] having a consistent decline in her overall functional status since this initial symptom").)

Kristin points to Dr. Shah's same 2019 notes—which suggest that Kristin may have had MS before 2019—as evidence that establishes her MS was medically determinable during the relevant period. (Pl.'s Obj. at 2.) That argument fails for three reasons. First, the ALJ weighed the same notes in his written decision (R. 16), and it is not the court's role to reweigh evidence the ALJ already considered, *see Hill*, 774 F. Supp. 2d at 780. Second, Kristin does not explain—and the court struggles to infer—how her doctor's suggestion, on December 19, 2019 (R. 397), that her MS may have been present before that date establishes conclusively

that she had been afflicted with the disease during the relevant period—November 1, 2016, through December 31, 2017. Third, a doctor's opinion does not establish a medically determinable impairment; that determination is for the Commissioner to make. *Cf.* 20 C.F.R. § 404.1521 ("We will not use . . . a medical opinion to establish the existence of an impairment[].").

Kristin also cites to her testimony as evidence that her MS was a medically determinable impairment prior to her date last insured. (*See* Pl.'s Obj. at 2; Pl.'s Br. Supp. Summ. J. at 15.) While ALJs must consider subjective statements in determining the *severity* of a medically determinably impairment, they are instructed not to consider such statements at the threshold task of determining the existence of a medically determinable impairment. 20 C.F.R. § 404.1521 ("We will not use your statement of symptoms . . . to establish the existence of an impairment[]."). At bottom, the ALJ looked at sufficient evidence and found Kristin's later-diagnosed MS was not medically determinable from November 1, 2016 through December, 2017. That finding was supported by substantial evidence, so Kristin's first objection will be overruled.[3]

---

[3] For the reasons stated, the court finds no error in its *de novo* review as it relates to the ALJ's finding that Kristin had "stress headache disorder" and "degenerative disc disease of the cervical spine," but not MS, as severe medically determinable impairments. To the extent Kristin argues the R&R's harmless-error analysis was erroneous, the court agrees only inasmuch as the case provided by the government and cited by the R&R for that proposition is inapplicable here. *See Vitrano v. Colvin*, No. 6:14-cv-00051, 2016 WL 1032888 (W.D. Va. Mar. 15, 2016) (noting that "any error by the ALJ at step two is harmless if the ALJ considers the effects of all of [claimant's] impairments" when deciding certain impairments are severe or not). Here, the ALJ found Kristin's MS was not a medically determinable impairment during the relevant period and therefore did not reach the question of whether it was severe.

But the R&R's bottom-line point is correct. As another district court noted, "any error the ALJ may have made by not determining that [the claimant's MS] was a medically determinable impairment was harmless" when he discussed the alleged underlying symptoms in crafting his RFC analysis. *Bruce v. Comm'r of Soc. Sec. Admin.*, No. 1:21-cv-35, 2022 WL 1555402, at *7 (N.D. Ohio May 17, 2022).

**B.     RFC**

Kristin next objects to the R&R's finding that the ALJ's RFC determination was supported by substantial evidence. According to Kristin, Judge Memmer should have realized the ALJ essentially erred at every step of his RFC analysis. But due to a lack of specificity, analysis, or plain incorrect ascription of error, none of Kristin's arguments is persuasive.

In determining Kristin's RFC, the "ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (cleaned up). He must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7; *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). As distilled by the Fourth Circuit, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The second component requires the ALJ to "build an accurate and logical bridge" from the evidence in the record to his RFC conclusions. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). That bridge does not need to be perfectly crafted and "specifically refer to every piece of evidence," *Reid*, 769 F.3d at 865 (cleaned up), but it does need to allow for "meaningful review," *Mascio*, 780 F.3d at 636.

At the outset, the court notes that the ALJ was required to consider the limiting effects of Kristin's degenerative disc disease of the cervical spine, stress headache disorder, asthma,

- 11 -

allergies, and posttraumatic stress disorder ("PTSD") in crafting her RFC.[4] *See* SSR 96-8p, 1996 WL 374184, at *2 ("[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."). For the reasons explained below, he did so, and provided a narrative discussing the record evidence and how it led to the conclusion that Kristin could perform sedentary work with additional limitations during the relevant period.

Kristin takes issue with the ALJ's determination that she could perform sedentary work for a full workday given her claimed difficulty with sitting and her need to lie down and take breaks. (Pl.'s Obj. at 3–5.) She assigns error to the ALJ's "analysis . . . regarding [her] sitting abilities during an eight[-]hour workday," claiming that the evidence did not support the ALJ's finding and that he failed to explain how his finding translated to working a full-time job. (Pl.'s Obj. at 3–4.) The court disagrees. In his RFC analysis, the ALJ acknowledged that Kristin testified that she "could sit for 30 to 60 minutes" during the relevant period. (R. 20.) Then, in the context of analyzing a medical opinion,[5] the ALJ noted that Kristin did not, during the relevant period, "describe[] substantial difficulties sitting, and clinicians did not indicate that she appeared uncomfortable sitting." (R. 21.) For support, the ALJ cited her medical records

---

[4] It bears noting that because the ALJ found Kristin's MS and back pain—specifically, her "thoracic or lumbar impairment" (R. 16)—were not medically determinable impairments, the ALJ was not required to consider those in crafting Kristin's RFC. *See* SSR 96-8p, 1996 WL 374184, at *2.

[5] Kristin seems to argue that because the ALJ noted this evidence in the same paragraph in which he ultimately found a medical opinion was not persuasive, the whole paragraph is off limits. (Pl.'s Obj. at 4.) She does not cite legal support for this proposition and, at any rate, her characterization of the ALJ's decision is incorrect. The ALJ noted that the part of the medical opinion that "implies she could sit" for "about six hours" *was* supported by the evidence. (R. 21.) That, in turn, is consistent with the ALJ's note that the opinion at issue was "*largely* inconsistent with the evidence." (*Id.*)

from the relevant period (*id.*),⁶ which include questionnaires from April 4, 2017 (R. 382), and October 4, 2017 (R. 389), in which Kristin indicates she "can sit in any chair as long as I like." Substantial evidence supports the ALJ's finding that her complaints about her ability to sit during the relevant period were overstated, and the court has no trouble connecting the record evidence to the ALJ's RFC finding, *i.e.*, the fact Kristin could "sit in any chair as long as [she] like[s]" ostensibly means she could sit for a full workday. (R. 21.)

For the same reasons, the ALJ did not err by "not considering whether her impairments and resulting symptoms would cause her to experience episodes of pain or fatigue necessitating breaks during the workday and how often those breaks would occur." (Pl.'s Obj. at 4.) First, that argument is incorrect; the ALJ did consider Kristin's alleged symptoms, citing her testimony that "she need[ed] to lie down during the day." (R. 20.) Second, because the ALJ concluded that evidence from the relevant period belied that claim and cited records to support his finding, his decision should be affirmed. (R. 21.) And in any event, an "ALJ is not required to make specific findings related to each of [Kristin's] subjective assertions." *Thai L. v. Saul*, No. 7:19-cv-708, 2021 WL 519904, at *8 (W.D. Va. Feb. 8, 2021) (citing *Shinaberry v. Saul*, 952 F.3d 113, 123–24 (4th Cir. 2020)); *Mascio*, 780 F.3d at 636 (rejecting a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). At bottom, the ALJ's conclusion that Kristin could do sedentary work for a full workday is a logical extension of his finding that Kristin's alleged substantial difficulty with sitting and need to lie down from fatigue were not supported by the weight of the records from the relevant

---

⁶ Of course, the ALJ could have been more specific in his citations, but the court's review was not frustrated. *Contra Mascio*, 780 F.3d at 636.

period. (*Id.*)

Kristin is of course correct that her "own description of [her] medical impairments play[s] a crucial role in a proper RFC determination." (Pl.'s Obj. at 4 (citing *Mascio*, 780 F.3d 639–40).) But it is also crucial that the ALJ assess the credibility of those descriptions in connection with the rest of the record while conducting his RFC analysis. *See Mascio*, 780 F.3d at 639 (citing SSR 96-8p, 1996 WL 374184 and 20 C.F.R. § 416.929(a)).

Kristin's last[7] specific argument in her RFC objection is somewhat unclear:

> The [R&R] erred in concluding the ALJ engaged in a lengthy discussion regarding the medical opinion evidence and appropriately explained the persuasiveness of the opinions through an analysis of their supportability and consistency. The [R&R] pointed to the ALJ's discussion of the opinion evidence in support of his RFC findings and that he relied upon Dr. Surrusco's[8] opinion but the ALJ found the opinions of the state agency physicians, including Dr. Surrusco, to be unpersuasive.

(Pl.'s Obj. at 6 (internal citations omitted).) Kristin's argument does not assert the ALJ erred but appears to challenge the R&R's characterization of the decision. Indeed, she does not challenge the ALJ's analysis of Dr. Surrusco's decision in her summary judgment brief. (*See generally* Pl.'s Br. Supp. Summ. J.) On the court's own review, the R&R does nothing more than accurately cite to the ALJ's finding that Dr. Surrusco's opinion was inconsistent with some of

---

[7] Kristin also asserted in this objection that the ALJ erred in his finding that her (1) other objective medical evidence, (2) conservative treatment, and (3) participation in daily activities undercut her subjective allegations. (Pl.'s Obj. at 5.) The court addresses why this challenge to the ALJ's weight of the evidence fails later in the opinion, as Kristin makes the same evidentiary arguments in her third objection. *See infra* III.C. But as these arguments relate specifically to her RFC objection, the ALJ adequately explained how the inconsistencies between Kristin's subjective allegations and the rest of the evidence bely Kristin's alleged symptoms and show why she can perform sedentary work with additional limitations. (R. 20–22); *see infra* III.C.

[8] Dr. Surrusco is a state-agency physician who reviewed the evidence and concluded, after undertaking his own RFC analysis, that Kristin's limitations were consistent with light work. (R. 68–71.); *see* 20 C.F.R. § 404.1567(b).

Kristin's subjective allegations as support for the fact that the ALJ appropriately considered Kristin's subjective allegations while crafting the RFC. (R&R at 17.) Contrary to Kristin's argument, Judge Memmer correctly stated that her subjective allegations "discredit[ed] Dr. Surrusco's medical opinion." (*Id.*) Accordingly, this argument, insofar as it is a legitimate one, fails.[9]

After considering each of Kristin's arguments, it is readily apparent that her last general one—that the ALJ's decision did not include the required "narrative description under SSR 96-8p and contain[] sufficient information" for "meaningful review"—fails. (Pl.'s Obj. at 6.) The ALJ thoroughly reviewed Kristin's allegations and the rest of the evidence in the record and explained that the evidence supports some nonexertional limitations but that, as a whole, the evidence showed she could perform sedentary work with additional limitations to account for her headaches. (R. 19–22.) The ALJ's narrative built a logical bridge, supported by substantial evidence, from the evidence to his conclusion that allows for meaningful review. *See Monroe*, 826 F.3d at 189; *Mascio*, 780 F.3d at 636. Accordingly, Kristin's RFC objection will be overruled.

## C.     Subjective Allegations

Last, Kristin asserts that the ALJ's analysis of her subjective allegations was legally deficient and not supported by substantial evidence.

When evaluating a disability claimant's symptoms and how they relate to her ability to

---

[9] Even if the ALJ's analysis of Dr Surrusco's opinion was legally deficient, the court notes that any error would be harmless because the ALJ discounted Dr. Surrusco's opinion *to Kristin's credit*. Dr. Surrusco opined that Kristin "could stand and walk for about six hours in an eight-hour day, and could sit about six hours. She could lift and carry 20 pounds occasionally and ten pounds frequently." (R. 21 (citing R. 68–71).) While the ALJ agreed with Dr. Surrusco's assessment of her sitting ability, he disagreed with the rest of the medical opinion, finding it inconsistent with the rest of the record, and added several limitations to Kristin's RFC. (R. 21–22.)

work, an ALJ must "use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). The first step is to consider the objective medical evidence to determine if the claimant has a "medically determinable impairment" that could reasonably produce her alleged symptoms. *Id.* (citing 20 C.F.R. § 404.1529(b)). If so, the ALJ must next "assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (citing 20 C.F.R. § 404.1529(c)). In other words, the second step requires the ALJ to determine whether a claimant actually suffers to the degree she claims.

To guide that inquiry, the ALJ "considers the 'entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.'" *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (quoting SSR 16-3P, 2016 WL 1119029, at *4). Among other factors, an ALJ considers the symptoms in relation to the claimant's daily activities and her course of treatment. 20 C.F.R. § 404.1529(c). Ultimately, the ALJ must weigh a claimant's subjective allegations against "the objective medical evidence and other evidence," and "consider[s] whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." *Id.*

Here, the ALJ determined that Kristin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding the intensity and limiting effects of those symptoms were not entirely consistent with other evidence in the record. (R. 20.) Kristin claims this decision was legally flawed and unsupported

by substantial evidence. The court disagrees.

Kristin first argues that the ALJ erred when he "impermissibly increased [her] burden of proof by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." (Pl.'s Obj. at 7.) Kristin appears to misunderstand this legal standard. She is correct that an ALJ may not discredit a claimant's subjective complaints about the pain or intensity of her symptoms "based *entirely* upon the belief that they were not corroborated by the record's medical evidence." *Shelley C.*, 61 F.4th at 360 (emphasis in original). But when assessing the severity of her symptoms, the ALJ must weigh the individual's statements against other evidence in the record, including objective medical evidence, the claimant's daily activities, and her course of treatment. SSR 16-3p, 2016 WL 1119029, at *4–7; (*see also* R. 19 (laying out this standard).) In other words, it is legal error to *require* objective medical evidence to corroborate the claimant's statements, but it is proper to evaluate her statements along with other evidence in the record.

In assessing Kristin's subjective allegations regarding the severity of her symptoms, the ALJ first listed her statements:

> The claimant has stated that her symptoms prevented her from maintaining full[-]time employment because she could not stand or walk for more than a few minutes before she needed to rest, she had trouble using her hands, she need to lie down during the day, she could not concentrate, remember information, or make decisions, and she struggled to complete even routine daily tasks independently.

(R. 20–21.) The ALJ then walked through his reasoning as to why the claimed severity is unsupported by (1) objective evidence, (2) her conservative course of treatment, and (3) her daily activities. (R. 21.) Kristin takes issue with every aspect of the ALJ's reasoning.

First, Kristin argues that the ALJ failed to explain how his finding that the objective evidence—which showed physical examinations from the relevant period "were largely normal, with providers failing to describe any abnormalities in her gait, strength, dexterity, or mental status"—undermines her subjective allegations of the severity of her symptoms. (R. 21; *see* Pl.'s Obj. at 7.) The ALJ's linear reasoning is persuasive. After listing Kristin's subjective allegations, he notes his finding that "[t]he objective evidence, however, does not fully support these statements," acknowledges how some objective evidence supports Kristin's claims, before citing objective evidence to support his weighing of the evidence. (R. 20–21.) While perhaps Kristin would like the ALJ to go even more into detail as to why, for example, a physical examination that showed no issues in her dexterity undercuts her allegation that "she had trouble using her hands," the ALJ's explanation is sufficient. (R. 20–21.) The ALJ adequately explained his finding that the severity of her symptoms is inconsistent with the bulk of the objective evidence in the record.

Second, she argues that the ALJ failed to explain his findings that Kristin's conservative treatment undercut her subjective allegations. Specifically, Kristin wanted the ALJ to explain in even more detail how her treatment—which consisted of "medications and appointments with a chiropractor" together with the fact that "no provider recommended that she pursue more aggressive measures to help manage her symptoms" (R. 21)—was not consistent with her claimed symptoms. The court has no trouble seeing the ALJ's logical reasoning in this paragraph because a conservative course of treatment can weigh against a claimant's subjective allegations. *See Stitely v. Colvin*, 621 F. App'x 148, 151 (4th Cir. 2015) (citing *Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009)).

Third, Kristin claims the ALJ erred by not considering the extent of her daily activities when he found that they did not support her subjective allegations regarding the severity of her symptoms. (Pl.'s Obj. at 7–8.) Kristin's argument misstates what the ALJ found, as he noted Kristin could "do *light* chores around the house, prepare *simple* meals, drive, shop *for a few items*, attend church and play cards with friends." (R. 21 (emphasis added).) In *Arakas*, the Fourth Circuit found the ALJ's treatment of the claimant's daily activities was erroneous because "he improperly disregarded her qualifying statements regarding the limited extent to which she could perform daily activities." 983 F.3d at 99. Here, the ALJ noted the qualifying limitations in his decision and cited to Kristin's own testimony in his discussion of her daily activities. (R. 21.) Accordingly, the ALJ considered the extent of Kristin's daily activities in assessing her statements regarding the severity of her symptoms.

For all these reasons, Kristin's last objection will be overruled.

### IV. CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, Kristin's objections will be overruled, Judge Memmer's R&R will be adopted in its entirety, Kristin's motion for summary judgment will be denied, and the Commissioner's final decision will be affirmed.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 29th day of March, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE